Dear Honorable Nathaniel J. McFadden
On behalf of the General Assembly's Joint Audit Committee, you have requested an opinion concerning the computation in past years of the State "basic current expense" aid to local school systems. Your inquiry results from a recent audit of the Maryland State Department of Education ("MSDE") by the Legislative Auditor. The Auditor determined that, in some instances, adjustment of that computation to take account of late submissions by some local school systems would have reduced the amount of State aid to all local school systems for certain years. With respect to the computation for fiscal year 2002, you ask whether the State may recover the difference by reducing aid due to local school systems in future years.
In our opinion, the State education law does not contemplate an adjustment of the State basic current expense aid for a particular year after the passage of the budget bill and the distribution of funds to local school systems. With respect to fiscal year 2002, a retroactive adjustment would be inconsistent with the process by which the amount of State aid to local schools was computed for the State budget. Moreover, to the extent that the State attempted to recoup funds based on an adjustment, that action would affect all school systems — i.e., it would penalize school districts that submitted financial information in a timely manner, as well as those that did not. Nor is there any statutory provision that would authorize such an adjustment in future years. Rather, the General Assembly has provided for specific remedies against jurisdictions that fail to provide timely reports to the State Board of Education.
 I Background
A. Basic Current Expense Formula
For many years until 2002, the key component of the State's financial support of the public school system in each county was known as "basic current expense" aid.[1] For example, in fiscal year 2002, the General Assembly appropriated nearly $1.7 billion for this purpose. Chapter 102, Laws of Maryland 2001, at p. 974. This amount was derived under a complex formula. See Annotated Code of Maryland, Education Article ("ED"), § 5-202 (2001 Repl. Vol.).[2]
 Basic Current Expenses to be Shared
The starting point for the computation was the determination of the "basic current expenses to be shared" by the State and counties. ED § 5-202(b)(2). That figure was defined as the product of the number of pupils[3] multiplied by the "per pupil basic current expense figure." The State education law defined the "per pupil basic current expense figure" as:
 the average of the basic current expenses per pupil for the third and fourth preceding fiscal years multiplied by 0.75 for fiscal year 1994 and for each fiscal year thereafter, as calculated by [MSDE] on or before July 1 prior to the fiscal year.
ED § 5-202(a)(13)(ii). "Basic current expenses" was defined as the sum of certain expenditures for public school purposes. ED § 5 — 202(a)(3). Thus, important variables in the calculation of "basic current expenses to be shared" were the cumulative actual expenditures of all local school systems in two prior fiscal years.
County Share of Basic Current Expenses to be Shared
Once the "basic current expenses to be shared" was determined, the next step under the statute was to determine each county's share of that figure. To qualify for the State's contribution to basic current expenses, a county was required to appropriate funds in an amount equal to the product of the wealth of the county and a local contribution rate.[4] The formula also included a "maintenance of effort" requirement — i.e., a requirement that the county maintain at least the same local appropriation per pupil as the appropriation in the prior fiscal year. See ED § 5-202(b)(3)-(4). Thus, the county share was also based in part on the county's actual past expenditures.
State Share of Basic Current Expenses to be Shared
The State share of basic current expense aid for a particular county was defined as the difference between the "basic current expense to be shared" and the particular county's share. ED § 5 — 202(b)(5).[5]
Because both variables in this equation were based in part on actual past expenditures, the State share of basic current expense aid could vary depending on the actual expenditures for the public schools in prior fiscal years.[6] The total of the State aid for all counties was to be included in the annual State budget as basic current expense aid.
B. Financial Reports by Local School Boards
MSDE applied the formulas outlined above to compute the State share of basic current expense aid, using expenditure data derived from reports of local school systems. Under the State education law, the State Superintendent is to receive and examine reports concerning expenditures by local school systems. ED § 2 — 303(e). The relevant expenditure data were obtained from two reports and a reconciliation of those reports.
First, State law has required each county school board to provide for an annual audit of its accounts in accordance with standards adopted by the State Board of Education. ED § 5-109. The results are to be reported to the State Superintendent within three months after the close of the fiscal year — i.e., by the end of September.[7] ED § 5-109(c); COMAR 13A.02.07.04F.
Second, each local board of education is also required to submit an annual financial report to the State Board. ED § 5-111; COMAR13A.02.01.02D. MSDE requires each local system to submit this report by November 15 of each year. See Financial Reporting Manual for MarylandPublic Schools at p. A-1-2. To the extent that there are discrepancies between the annual report and the audit, the local superintendent is to submit a report reconciling those differences by December 31 following the close of the fiscal year. COMAR 13A.02.07.04G.
The reporting deadlines in the statute and regulations were apparently designed to allow substantial time for MSDE to compute the "per pupil basic current expense figure" by the following July 1, as required by statute. See ED § 5-202(a)(13)(ii). That figure was then used, with the other data in the formula, to compute the mandated amount of State aid to be included in the State public school budget that the Superintendent certified to the Governor. ED § 2-205(j)(1)(ii). Under the State Constitution, this aid had to be included in the proposed budget that the Governor submitted to the Legislature the following January. Maryland Constitution, Article III, § 52(3), (4)(f).
An example illustrates this time line. By definition, the "per pupil basic current expense figure" was derived from expenditure data from the third and fourth preceding fiscal years. Thus, the computation of State aid for the fiscal year 2002 State budget was derived from expenditure data for fiscal years 1998 and 1999. Each local school system was required to file its audited financial statement for 1999 by September 30, 1999, its annual financial report by November 15, 1999, and the reconciliation of any differences by December 31, 1999. MSDE had to compute the "per pupil basic current expense figure" from that data by July 1, 2000. That figure was then used, along with the 1998 figures and other data, to compute the State share of basic current expense aid included in the proposed budget that the Governor presented to the Legislature in January 2001 for fiscal year 2002.
Local school systems then prepared their own budgets based on the computation of the required county share of basic current expense aid and on the appropriation of basic current expense aid in the State budget bill.
C. Legislative Audit
In an audit report concerning the State Department of Education, the Legislative Auditor found that some local school systems submitted reconciliations of State aid well after the due date (December 31). Office of Legislative Audits, Audit Report for State Department of Education (February 2003) at pp. 17-18. The Auditor found that some school systems failed to submit financial data by the due date for fiscal years 1999 through 2001. He further found that MSDE did not make any adjustments to the calculation of State aid based on the late-filed reconciliations. The audit report stated that the failure to adjust for one local system's late reconciliation resulted in the overpayment to all local school systems of approximately $1 million for fiscal year 2002.Id., p. 17.
 II Analysis
You have asked whether the State may recover the overpayment to local school systems with respect to fiscal year 2002 by offsetting local school aid in a future year. In other words, does State law permit a retroactive adjustment of basic current expense aid for a prior fiscal year and, if so, may the State reduce future payments to local school districts in light of that adjustment?
The computation that is the subject of your inquiry must be considered in context. The proposed budget that the Governor submits to the Legislature each January must include any amounts required by statute for the "establishment and maintenance" of public schools. Maryland Constitution, Article III, § 52(4); see 36 Opinions of the AttorneyGeneral 109, 111 (1951). The General Assembly may not reduce that amount. Maryland Constitution, Article III, § 52(6). Until 2003, basic current expense aid was a key component of the mandated appropriation for public schools. Obviously, it was important that an accurate figure be available on a timely basis for inclusion in the budget.
As noted above, the starting point for the computation of basic current expense aid was the "per pupil basic current expense figure," derived in part from local expenditure data for prior fiscal years. ED § 5-202(a)(13(ii). By definition, the "per pupil basic current expense figure" was to be calculated by MSDE "on or before July 1 prior to the fiscal year." Id. Thus, the statute itself set a July 1 deadline for computation of the pertinent variable. It was the task of MSDE to gather the necessary data to make the computation.
This system for computing mandated State aid to public schools was premised on the prompt and accurate reporting of past expenditures by local school systems. However, any computation that relies on past actual data is necessarily subject to varying degrees of imperfection. The statutes and regulations that required local school districts to submit annual audits, financial reports, and reconciliations included deadlines that would permit MSDE to have the most accurate expenditure information available when it made the computation. If those deadlines were missed, or if more accurate information later became available, there was no provision for delaying the computation.
If a local school system was delinquent in providing a report, or if the data from one jurisdiction was peculiarly subject to change, the remedy lay in the enforcement authority accorded to the State Superintendent and the State Board by the State education law. For example, if a local school system violated the Board's bylaws, rules, or regulations, the Superintendent might require the Comptroller to withhold funds from that school system. ED § 2-303(b). In addition, the State Board might institute legal action against a local system to enforce the State education law or regulations. ED § 2-205(d).[8]
Even if the statute could be interpreted to allow for recomputation of the "per pupil basic current expense figure" after July 1, there are both practical and legal obstacles to a retroactive adjustment of the amount of basic current expense aid after a budget has been adopted and the funds have been distributed to local school districts.
For example, a recalculation would affect the computation not only of the mandatory amount of State aid, but also the county share of school aid. Each local school board devised its school budget based in part on the State "per pupil basic current expense figure" computed by MSDE. In particular, the minimum county share of basic current expense aid was calculated according to a formula that used that figure. A local government's decision whether to devote additional funds to the public schools was presumably also influenced by the amount of the State share of basic current expenses — a figure also determined by the expenditure data. A retrospective recalculation based on late-filed reconciliations would affect those county calculations.
Second, a retroactive adjustment, if permitted, would affect not just the school district that was delinquent in submitting data, but all school districts in the State. The "per pupil basic current expense figure" is based on accumulated data from all school districts. That data is then used to compute a single "per pupil current expense figure" from which the amount of aid for each jurisdiction is derived. If a late reconciliation submitted by one school district resulted in a significant reduction in the figure, all school districts in the State would have received "overpayments" of State aid. To reduce State aid retroactively would effectively require all counties — even those counties that had scrupulously complied with MSDE's regulations concerning submission of data — to replace those funds after the fact. We do not believe that the General Assembly intended such an outcome.
Finally, it is conceivable that a retrospective adjustment could result in an increase in the State share of basic current expense aid for past years. However, if this adjustment were made after passage of the State budget there would be no appropriation to make up the "underpayment." Nor is there any statutory mechanism for doing so.[9]
 III Conclusion
In our opinion, the State education law does not contemplate an adjustment of the State basic current expense aid for a particular year after the passage of the budget bill and the distribution of funds to local school systems. With respect to fiscal year 2002, a retroactive adjustment would be inconsistent with the process by which State aid to local schools was computed for the State budget. Moreover, to the extent that the State attempted to recoup funds when an adjustment would reduce the amount of school aid, that action would affect all school systems — i.e., it would penalize school districts that submitted financial information in a timely manner, as well as those that did not. Nor is there any statutory provision that would authorize such an adjustment in future years. Rather, the General Assembly has provided for specific remedies against jurisdictions that fail to provide timely reports to the State Board of Education.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The State contribution to local public schools has been called "basic current expense" aid since 1922, although the computation of that figure changed over the years. The formula pertinent to your inquiry was first enacted in 1973, see Chapter 360, Laws of Maryland 1973, and later amended on several occasions.
In 2002, the General Assembly substantially revised the formula for State aid to local school districts in legislation popularly known as the Thornton bill (it embodied recommendations of the Commission on Education Finance, Equity, and Excellence headed by Dr. Alvin Thornton). See
Chapter 288, Laws of Maryland 2002. Under the Thornton legislation, the key component of State aid to local school systems is now known as the State share of the "foundation program." See Annotated Code of Maryland, Education Article, § 5-202(a)(12) (2003 Supp.). Unlike the former basic current expense aid, computations under the foundation program do not involve figures for past school expenditures.
[2] Unless otherwise noted, statutory references to the Education Article in this opinion are to the 2001 Replacement Volume, which sets forth the relevant statutes prior to enactment of the Thornton legislation.
[3] The statute employed the somewhat more precise terminology of "full-time equivalent enrollment," which was defined as all students enrolled in grades 1 through 12, supplemented by the number of kindergarten and evening high school students according to formulas set forth in the statute and implementing regulations. ED § 5-202(a)(7).
[4] "Wealth" was defined as the sum of several measures, including net taxable income, and assessed values of real property and personal property. ED § 5-202(a)(8). The "local contribution rate" was itself the result of a mathematical formula involving the full time equivalent enrollment, the per pupil basic current expense figure, the sum of the wealth of all jurisdictions, and other components. ED § 5-202(b)(4).
[5] The statute also established a floor for this figure — the State share was to equal at least the product of $60 and the county's full-time equivalent enrollment.
[6] The 2002 Thornton legislation provided a specific numeric formula for computing the State share of the foundation program for public schools for fiscal year 2004 and subsequent years. Past actual expenditures are not a part of that formula. See ED § 5-202
(2003 Supp.).
[7] Each local school district is also required to submit a separate audit report with respect to its expenditure of federal funds by December 31 following the end of the fiscal year. COMAR 13A.02.07.05.
[8] The General Assembly has also provided a specific remedy if a local board fails to make a required report to a local governing body. ED § 5-113. MSDE is to investigate a complaint about a delinquent report. If the State Superintendent determines that a local board has not complied with a reporting requirement under State law "without reasonable justification," the local board's expenditures may be limited to some extent, at the discretion of the county governing body. ED § 5-113(b).
During its 2004 session, the General Assembly created additional mechanisms for fiscal accountability and financial reporting and also directed the Legislative Auditor to undertake periodic audits of local school systems. See Chapter 148, Laws of Maryland 2004.
[9] If the General Assembly believes that adjustments should be made to future school aid because past computations of aid were based on faulty data, it can of course amend the State education law to allow for such adjustments. *Page 107